UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| ELIZABETH BECKLEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| CITY OF ATLANTA, GEORGIA, | ) | _____ |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

### I. Introduction

1. This is an action for discrimination on the basis of disability, brought pursuant to Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 701.

2. The facts will show that the Plaintiff, who is paraplegic and relies on a wheelchair for mobility, was and is unable to safely access the sidewalks and crosswalks at the intersection of Martin Luther King, Jr. Blvd. and Centennial Olympic Park Drive in downtown Atlanta because of a total lack of wheelchair ramps or other means of access for a person who relies on an assistive device for

mobility.

3. The Plaintiff is seeking an order from this Court requiring the City to make reasonable modifications to the sidewalks and crosswalks in question, so that Plaintiff and others with mobility impairments may access them.

4. The Plaintiff is further seeking damages from the City, due to its deliberate indifference to the rights of disabled people in the maintenance of this intersection, and attorneys' fees and costs of litigation.

## II. Jurisdiction and Venue

5. This Court has original, federal-question jurisdiction over this action, pursuant to the ADA and Rehabilitation Act.

6. This Court has personal jurisdiction over the City of Atlanta, which is located within this district and division.

7. Venue is proper in this Court, because the City of Atlanta is located within this district and division and the events in question occurred herein.

## III. Parties

8. Elizabeth Beckley is an American with a disability. Due to an automobile accident, the lower half of her body is paralyzed, and she is unable to walk with her legs.

9. Mrs. Beckley relies on an electronic wheelchair for mobility.

10. Mrs. Beckley is a resident of Rockdale County, Georgia. She submits herself to the jurisdiction of this Court.

11. The City of Atlanta is a municipal corporation with the capacity to sue and be sued.

12. The City of Atlanta receives federal funds in the area of transportation and therefore is subject to the requirements of the Rehabilitation Act.

13. The City is responsible for maintaining the sidewalks and crosswalks at the intersection of Martin Luther King, Jr. Blvd. and Centennial Olympic Park Drive in downtown Atlanta.

14. The City may be served with the summons and complaint by personal service upon the Mayor, Kasim Reed, or his designee, at the Mayor's Office, which is located at 55 Trinity Ave SW #2500, Atlanta, GA 30303.

**IV.  Facts**

15. On December 31, 2015, Mrs. Beckley and her husband, Justin Beckley, went to the Georgia Dome in Atlanta, Georgia, to watch the Peach Bowl.

16. That night, following the game, the Beckleys exited the Dome at Northside Avenue. They traveled along the sidewalks south down Northside Avenue, then east along Mitchell Street, then northeast along Richard B. Russell

Plaza, in front of the federal courthouse, before finally heading back west on Martin Luther King, Jr. Boulevard ("MLK").

17. The Beckleys' desired destination was the CNN/Phillips parking deck on Centennial Olympic Park Drive ("Centennial"), where their vehicle was located.

18. However, when the Beckleys arrived at the intersection of MLK and Centennial, they discovered that there was no wheelchair ramp or other means to allow Mrs. Beckley to safely exit the sidewalk and cross the street.

19. Moreover, in order to legally and safely access the sidewalk that ran along Centennial, toward the parking deck, one would have to traverse two concrete "islands." The two "islands" between the MLK sidewalk and the Centennial sidewalk have straight, vertical curbs, with no wheelchair ramp or other access for a mobility device.

20. Therefore, Mrs. Beckley was unable to safely access the sidewalk that would take her along Centennial to the parking deck.

21. Hopeful to find a ramp on the opposite side of Centennial, the Beckleys went south down Centennial, where they found a ramp at the intersection of Centennial and Chapel Street. They crossed Centennial at Chapel, then traveled back north along the sidewalk, along Centennial, to the intersection

with MLK.

22. However, they found that, on this side of the intersection as well, there was no wheelchair ramp or other accommodation that would allow Mrs. Beckley to safely exit the sidewalk, cross the road, and travel north to the parking lot.

23. There were also two "islands" that a pedestrian must traverse to cross the road here, and each of these islands had straight, vertical curbs with no wheelchair access.

24. None of the sidewalks, nor the islands, at the intersection of MLK and Centennial have ramps or other accommodations for mobility devices.

25. Attached to this Complaint as Attachment 1 are photographs obtained from Google Maps Street View, which accurately depict the state of the sidewalks and crosswalks at this intersection on the day that the Beckleys confronted them.

26. The Beckleys then traveled back south down Centennial, crossed to the other side at the ramp at Chapel Street, went back up Centennial, then went back south-east down MLK, hoping to find a ramp at the intersection of MLK and Richard B. Russell Plaza that would allow them to cross MLK to the other side, which would then allow them to go back north-west along MLK, and

finally go north on Centennial to the parking area.

27.     At Richard B. Russell and MLK, there was a ramp that would allow them to exit the sidewalk onto the crosswalk across Richard B. Russell, but no ramp that would allow them to access the sidewalk on the opposite side of MLK, which is where they needed to go.

28.     By this point, the Beckleys were exhausted and distraught. They had been traipsing up and down the streets of downtown Atlanta searching in vain for a wheelchair ramp for nearly an hour. They had lost hope that they would ever find a ramp that would allow them to get to the parking area.

29.     Having run out of options, Mrs. Beckley exited the sidewalk and began to travel north-west on MLK, in the street, toward Centennial.

30.     Mr. Beckley walked alongside his wife and waved his arms to alert motor vehicles as to his wife's presence, to prevent her from being injured or killed.

31.     Mrs. Beckley felt frightened and humiliated and angry.

32.     Mrs. Beckley continued her trek on the road, amidst the traffic, north on Centennial, until she finally found a ramp that would allow her to access the sidewalk on Centennial.

33.     Because of the City's failure to make the sidewalks and crosswalks

in question accessible to people with mobility devices, Mrs. Beckley was required to take a path of travel that was significantly less convenient, significantly more dangerous, and significantly more time-consuming, than the safe and convenient path available to persons who do not rely on mobility devices.

34. The sidewalks and pedestrian crosswalks at MLK and Centennial are, to this day, inaccessible to mobility-impaired people who rely on assistive devices to travel.

### V. Legal Claims

#### Count I – Title II of the Americans with Disabilities Act (ADA)

35. By this reference, Plaintiff incorporates the above factual statements, as if fully stated herein.

36. Title II of the ADA provides that no "public entity" shall discriminate against an individual with a disability.

37. The City of Atlanta is a "public entity" covered by the ADA.

38. "Discrimination" in this context includes providing a public service that is not reasonably accessible to a person with a disability.

39. "Discrimination" in this context includes the provision of sidewalks and crosswalks for pedestrians as a whole, yet not making reasonable modifications to those areas to allow access by people who rely on wheelchairs

or similar mobility devices.

40. As described herein, the City of Atlanta maintains sidewalks and crosswalks at the intersection of MLK and Centennial which are not accessible to people who rely on mobility devices, including wheelchairs.

41. Plaintiff alleges that the failure to make reasonable modifications to these sidewalks and crosswalks has been done with deliberate indifference to the rights of people with mobility impairments. This is a high-traffic intersection in an area with heavy pedestrian traffic, used by people patronizing the Georgia Dome, Phillips Arena, the CNN Center, and other major areas of commerce. The defect is highly obvious, as the sidewalks are completely horizontal, with no access whatsoever for an assistive device. It is highly unlikely that those in a decision-making position with the City would not have knowledge of this defect.

42. Upon information and belief, the sidewalks and crosswalks described herein have been constructed, altered, or improved since January 26, 1992.

43. Therefore, the defense of "undue financial burden" is not available to the City under the ADA.

44. Moreover, upon information and belief, the installation of ADA-compliant ramps at this intersection would not work an "undue financial

burden" upon the City.

45. Plaintiff is likely to be in future need of reasonable access to the sidewalks and crosswalks in question here, as her husband is an employee of CNN, and she is a sports fan who would like to visit facilities such as the Georgia Dome, Phillips Arena, and other nearby sports facilities on equal terms to her non-disabled counterparts.

46. Plaintiff is entitled to relief under Title II of the ADA, including an order that the City make reasonable modifications to the intersection in question in order to make it accessible to her.

47. Plaintiff is entitled to recover compensatory damages for the harm she experienced, including fear, humiliation, anger, and other forms of emotional distress, as a result of the violations of the ADA described herein, due to the City's deliberate indifference to the rights of disabled people.

48. Plaintiff is entitled to additional relief under the ADA, including attorneys' fees and costs.

**Count II – Rehabilitation Act**

49. By this reference, Plaintiff incorporates the above factual statements as if fully stated herein.

50. The Rehabilitation Act provides that no entity receiving federal

funds shall discriminate against an individual based on that individual's handicap.

51.  The City of Atlanta is an entity that receives federal funds in numerous areas, including transportation.

52.  "Discrimination" in this context includes providing a public service that is not reasonably accessible to a person with a disability.

53.  "Discrimination" in this context includes the provision of sidewalks and crosswalks for pedestrians as a whole, yet not making reasonable modifications to those areas for people who rely on wheelchairs or similar mobility devices.

54.  As described herein, the City of Atlanta maintains sidewalks and crosswalks at the intersection of MLK and Centennial which are not accessible at all to people who rely on mobility devices, including wheelchairs.

55.  Plaintiff alleges that the failure to make reasonable modifications to these sidewalks and crosswalks has been done with deliberate indifference to the rights of people with mobility impairments. This is a high-traffic intersection in an area with heavy pedestrian traffic, used by people patronizing the Georgia Dome, Phillips Arena, the CNN Center, and other major areas of commerce. The defect is highly obvious, as the sidewalks are completely horizontal, with no

access whatsoever for an assistive device. It is highly unlikely that those in a decision-making position with the City would not have knowledge of this defect.

56.     To the extent that the sidewalks and crosswalks described herein have *not* been constructed, altered, or improved since June 3, 1977, the defense of "undue financial burden" is not available to the City under the Rehabilitation Act.

57.     Moreover, upon information and belief, the installation of ADA-compliant ramps at this intersection would not work an "undue financial burden" upon the City.

58.     Plaintiff is likely to be in future need of reasonable access to the sidewalks and crosswalks in question here, as her husband is an employee of CNN, and she is a sports fan who would like to visit facilities such as the Georgia Dome, Phillips Arena, and other nearby sports facilities on equal terms to her non-disabled counterparts.

59.     Plaintiff is entitled to relief under the Rehabilitation Act, including an order that the City make reasonable modifications to the intersection in question in order to make it accessible to her.

60.     Plaintiff is entitled to recover compensatory damages for the harm she experienced, including fear, humiliation, anger, and other forms of emotional

distress, as a result of the violations of the Rehabilitation Act described herein, due to the City's deliberate indifference to the rights of disabled people.

61. Plaintiff is entitled to additional relief under the ADA, including attorneys' fees and costs.

WHEREFORE, Plaintiff prays:

a. for a trial by jury;

b. for judgment in her favor on the claims asserted herein;

c. for an order declaring the City to be in violation of the ADA and Rehabilitation Act with respect to the intersection of MLK and Centennial;

d. for an order requiring the City to make reasonable modifications to the intersection of MLK and Centennial such that Plaintiff may access it;

e. that Defendant be required to pay compensatory damages to Plaintiff, in an amount determined by the enlightened conscience of the jury;

f. that Plaintiff be awarded reasonable attorneys' fees and costs; and

g. that the Court grant other legal and equitable relief as the court finds appropriate.

Respectfully submitted this May 2, 2016.

/s/ James Radford
James Radford
Georgia Bar No. 108007
*Counsel for Plaintiff*

Radford & Keebaugh
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, GA 30030
(678) 271-0300
james@decaturlegal.com